1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

NICHOLAS S. ROY,

                    Plaintiff,

          v.

VICTORIA BARSHAW, *et al.*,

                Defendants.

Case No.  C06-5296FDB

REPORT AND
RECOMMENDATION

Noted for October 26,  2007

     This case has been referred to the undersigned Magistrate Judge pursuant to Title 28 U.S.C. §§ 636(b)(1)(A) and 636(b)(1)(B) and Local Magistrates' Rules MJR 1, MJR 3, and MJR 4.  The matter is before the court on defendants' motion for summary judgment (Doc. 44) and defendants' motion to dismiss (Doc. 58).  After reviewing the motions, plaintiff's opposition, and the remaining record, the Court should grant defendants' motion for summary judgment and dismiss plaintiff's causes of action.

FACTUAL BACKGROUND

     In his Amended Complaint (Doc. 7), under the section entitled, "IV.  Statement of Claim" plaintiff was directed to briefly describe the facts of his case and to describe how each named defendant was involved.  Plaintiff provided a seven-page chronological log of events beginning in June 2004 through March 2006, describing events and allegations to support various claims made within the factual scenario.  A summary of the allegations follows:

     In June 2004, plaintiff prevailed in a consolidated lawsuit brought against the State of Washington, and was awarded $183.00 in costs.  Two months later, Plaintiff was awarded $795.00 in

1   compensatory damages and costs of $97.32 in a lawsuit brought against the Department of Corrections

2   ("DOC") and certain employees thereof.  Because of his legal success noted above, plaintiff claims

3   defendants retaliated against him in the form of a transfer to a more restrictive unit, a recalculation and

4   eight-month enhancement to his prison sentence, and the filing of seven writs of garnishment in Asotin

5   County Superior Court.

6          In February 2006 plaintiff negotiated a settlement in yet another unrelated lawsuit filed against the

7   Department of Corrections and certain employees thereof, including Risa Klemme, who is a defendant

8   named in the instant matter.  Plaintiff received $450.00 to settle the matter, and the settlement agreement

9   specifically stated the funds would be placed in Plaintiff's spendable trust account without any deductions

10  by the Department of Corrections.  Plaintiff claims that in retaliation for his continued success defendants

11  in this action advised the Asotin County Court of the availability of funds which lead to Asotin County

12  Superior Court  filing another writ of garnishment on his inmate trust account funds.  (Eventually the

13  claim for funds made by Asotin County was released, and thus, plaintiff's funds were not garnished, but

14  were frozen from March 20, 2006 until May 4, 2006.)

15         Plaintiff claims defendants further retaliated against his success in bringing legal action against the

16  Department of Corrections and its employees by denying him a transfer into a minimum custody unit,

17  initiating several unwarranted minor infractions between December 2005 through April 2006, harassing

18  statements from prison officers, unnecessary difficulty in obtaining copies of his legal materials from his

19  prison counselor, not allowing plaintiff to attend his classification/review hearing, denial of his request

20  for an extended family visit with his mother, dismissal from his prison employment, the unnecessary use

21  of a risk management team to address unsubstantiated behavior problems, wrongful delay in allowing

22  plaintiff to transfer to conduct legal work, the loss of his housing assignment and lengthy denial of access

23  to his personal property, including his legal materials.  In addition to retaliation, plaintiff claims

24  defendants acts, or omission to act, violated his rights protected by the First, Fifth, Eighth, and Fourteenth

25  Amendments to the United States Constitution.

26         The Amended Complaint names the following four defendants: Victoria Barshaw, a former trust

27  account manager at DOC; Gricelda Medina-Hansen, a financial analyst for DOC; Risa Klemme, the

28  public disclosure coordinator for DOC; and Denise Felton, a custodial unit supervisor for DOC.  Plaintiff

1  seeks compensatory damages and punitive damages, in the amount of $50,000.00.  In addition, plaintiff

2  asks the court for injunctive relief in the form of an order prohibiting any future retaliation.

3          On May 10, 2007, defendants filed a motion for summary judgment (Doc. 44).  Defendants argue:

4  (i) Victoria Barshaw should be dismissed for lack of service; (ii) plaintiff fails to state a claim; (iii)

5  plaintiff fails to demonstrate defendants retaliated against him; (iv) plaintiff does not have a liberty

6  interest in the minor infractions he received; (v) plaintiff fails to allege personal participation of

7  defendants Klemme and Hansen; (vi) plaintiff fails to meet the heavy burden necessary for the court to

8  grant a permanent injunction; and (vii) defendants are entitled to qualified immunity.

9          After reviewing the motion for summary judgment and other pending motions, on May 25, 2007,

10  the undersigned directed service of the amended complaint on Victoria Barshaw, and extended the time

11  for plaintiff to file opposition to the motion.  Thereafter, defendant Barshaw appeared in the matter and

12  filed a motion to dismiss (Doc. 58).  The motion to dismiss reflects many of the arguments made in the

13  motion for summary judgment, i.e., defendant Barshaw argues plaintiff has failed to state a claim,

14  plaintiff has failed to demonstrate defendant Barshaw retaliated against him, plaintiff does not have a

15  liberty interest in the minor infractions he received, plaintiff has failed to meet his burden to support a

16  permanent injunction, and defendant Barshaw is entitled to qualified immunity.

17                                        DISCUSSION

18          Summary judgment is proper only where "the pleadings, depositions, answers to interrogatories,

19  and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

20  material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).

21  The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial.

22  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257.  Mere disagreement or the bald assertion that a

23  genuine issue of material fact exists no longer precludes the use of summary judgment.  California

24  Architectural Building Products, Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987),

25  cert. denied, 484 U.S. 1006 (1988).  Defendants' have met their burden of demonstrating that there are no

26  genuine issues of material fact and that they are entitled to judgment as a matter of law.  Plaintiff has

27  failed to avert summary judgment by showing that a issue of material fact remains for trial.

28

*A. PLAINTIFF HAS FAILED TO SHOW PERSONAL PARTICIPATION BY DEFENDANTS KLEMME AND HANSEN*

Defendant argues plaintiff fails to show or demonstrate the necessary personal participation by defendants Klemme and Hansen to maintain a cause of action against these named defendants.  Having reviewed this argument this court agrees – plaintiff has failed to sufficiently describe how defendants Klemme and Hansen were personally involved in the alleged deprivations.

In order to state a claim under 42 U.S.C. § 1983, a complaint must allege facts showing how individually named defendants caused or personally participated in causing the harm alleged in the complaint.  Arnold v. IBM, 637 F.2d 1350, 1355 (9th Cir. 1981).   A defendant cannot be held liable under 42 U.S.C. § 1983 solely on the basis of supervisory responsibility or position.  Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694 n.58 (1978).  A theory of *respondeat superior* is not sufficient to state a § 1983 claim.  Padway v. Palches, 665 F.2d 965 (9th Cir. 1982).

Here, defendants Gricelda Medina-Hansen and Risa Klemme are named in the individual capacities employed as a financial analyst and public disclosure coordinator, respectively, for the DOC. Plaintiff does not provide sufficient details in his Amended Complaint to explain either of these defendants specific role in the alleged deprivations or violations of his federal civil rights.  A review of the Amended Complaint reflects no mention of defendant Hansen, other than one note indicating she was a named defendant in one of plaintiff's state civil action.  Defendant Klemme name was utilized more often, but again it was only in the context that she was an employee of DOC, an associate of the other defendants, and she was also identified as a defendant in one or more of plaintiff's state court civil lawsuits.  Plaintiff's Amended Complaint fails to show how either of these two defendants personally participated in the alleged claims or causes of action.

Similarly, plaintiff fails to show how defendants Klemme or Hansen personally participated in the alleged claims in his pleadings filed in opposition to the motion for summary judgment.  Plaintiff attempts to link defendants Klemme and Hansen to the complaint by stating they were each "principles" or "co-conspirators" to certain acts.  For instance, plaintiff alleges defendant Klemme was a "principle" or "co-conspirator" of defendant Barshaw's when Asotin County was contacted and informed that plaintiff had funds in his inmate trust account which led to garnishment of his funds.  Plaintiff further states defendants Klemme and Felton acted as "principles" or "co-conspirators" when his extended family visit application

1   was denied, when his request for off-cite work crew was denied and when he was denied the opportunity

2   to attend his classification hearing.  Plaintiff admits, "Ms. Klemme retaliated against Plaintiff by and

3   through her subbordinates [sic] as she herself didn't have direct contacts with Plaintiff at AHCC."

4       To show defendant Hansen participated in the alleged violations, plaintiff states defendant

5   Hansen's job duties make her a "co-conspirator."   Plaintiff explains, "Hansen had to of had direct or

6   indirect knowledge of the acts of retaliation that were committed by her or Victoria Barashaw [sic](Ms.

7   Hansen's supervisor at DOC).  Ms. Hansen is just as guilty as a co-conspirator of violating Plaintiff's

8   Constitutional Rights."  Plaintiff's Opposition Brief (Doc. 57) at 21.

9        As stated above, after reviewing the specific details of the alleged participation of defendants

10  Klemme and Hansen, the undersigned finds that plaintiff has not shown sufficient facts to support a

11  §1983 claims against either of these defendants.  Ms. Klemme and Ms. Hansen cannot be held liable

12  based on their supervisory capacity, as noted above, nor their alleged knowledge of the claims plaintiff is

13  making.  Allegations of a conspiracy must be supported by specific factual allegations to establish a

14  claim. <u>Karim-Panahi v. Los Angeles Police Department</u>, 839 F.2d 621, 626 (9th Cir.1988).  The court

15  should dismiss defendants Klemme and Hansen from this matter.

16  *B. RETALIATION*

17      The bulk of plaintiff's Amended Complaint is focused on a claim of retaliation.  To state a claim

18  for retaliation, a plaintiff "must allege both that the type of activity he engaged in was protected and that

19  the state impermissibly infringed upon his right to engage in the protected activity." <u>Rizzo v. Dawson</u>,

20  778 F.2d 527, 531 (9th Cir. 1985).  An inmate must show that he or she was retaliated against for

21  exercising constitutional rights and that the retaliatory action did not advance legitimate penological

22  goals, such as preserving institutional order and discipline. <u>Barnett v. Centoni</u>, 31 F.3d 813, 186 (9th Cir.

23  1994).

24      Defendants argue that the actions alleged to be retaliatory by plaintiff were necessary and proper

25  responses to plaintiff's behavior.  For example, defendants explain that plaintiff's application for an

26  extended family visit was denied by the Facility Risk Management Team because plaintiff had not been

27  programming for a minimum of six months, and he had received a serious infraction within the previous

28  12 months.  Plaintiff contests these reasons, but the court further notes that Plaintiff does not have a right

REPORT AND RECOMMENDATION
Page - 5

1   to extended family visits protected by the U.S. Constitution. <u>Toussaint v. McCarthy</u>, 801 F.2d 1080, 113

2   (9th Cir. 1986), *cert. denied*, 481 U.S. 1069 (1987).  The denial of his application for an extended family

3   visit does not support his claim or retaliation or any other cause of action.

4        Similarly, plaintiff's claims of denial of access to his legal material or his placement in a particular

5   prison unit do not support a claim of retaliation or a separate cause of action. First, inmates do not have a

6   constitutionally protected liberty interest in either remaining in the general prison population or,

7   alternatively, in not being placed in administrative segregation.  <u>Smith v. Noonan</u>, 992 F.2d 987 (9th Cir.

8   1993). . *See* <u>Toussaint v. McCarthy</u>, 801 F.2d 1080, 1091-92 (9th Cir. 1986)(an inmates transfer to

9   administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence);

10  <u>May v. Baldwin</u>, 109 F.3d 557, 565 (9th Cir. 1997)(placement in segregation resulting in the loss of

11  recreation time and other privileges does not rise to a constitutional deprivation requiring adequate due

12  process safeguards).

13       Plaintiff claims defendants retaliated against him when he was denied transfer to a particular unit,

14  which consequently caused him to lose temporary access to his personal property, including his legal

15  materials.  The Supreme Court has held that prisoners have a constitutional right of meaningful access to

16  the courts premised on the Due Process Clause.  <u>Bounds v. Smith</u>, 430 U.S. 817, 821 (1977).  "Right of

17  access" claims that do not allege inadequacy of the law library or inadequate assistance from persons

18  trained in the law, must allege an "actual injury" to court access.  <u>Sands v. Lewis</u>, 886 F.2d 1166, 1171

19  (9th Cir. 1989).  An "actual injury" consists of some specific instance in which an inmate was actually

20  denied access to the courts.  <u>Id</u>.  Only if an actual injury is alleged may plaintiff's claim survive.  <u>Id</u>

21       Here, plaintiff does not show any "actual injury" to support an independent "access to court"

22  claim against defendants.  Moreover, the transfer and temporary loss of use of his personal property was

23  within the discretion of the DOC.  Plaintiff had been transferred in the pat to accommodate his need to

24  access a legal library, and it appears his placement has been due in part to his behavior.  The court finds

25  no basis for a claim of retaliation.  Transfer from one institution to another does not implicate due

26  process.  <u>Meachum v. Fano</u>, 427 U.S. 215, 225 (1976).

27       In sum, the court finds no factual basis sufficient to support a claim of retaliation.  The court

28  should grant defendant's motion to dismiss plaintiff's retaliation claims, as well as plaintiff's claims

REPORT AND RECOMMENDATION
Page - 6

1   related to the denial of his application for an extended family visit, plaintiff's access to courts, and

2   plaintiff's claim of improper transfer to another unit or custody level.

3   *C. CRUEL AND UNUSUAL PUNISHMENT*

4       To state a claim of cruel and unusual punishment plaintiff must satisfy two requirements:

5   First, the deprivation alleged must be, objectively, "sufficiently serious" . . .. For a claim (like
    one here) based on a failure to prevent harm, the inmate must show that he is incarcerated
6   under conditions posing a substantial risk of serious harm.

7   Farmer v. Brennan, 114 S.Ct. 1970, 1977 (1994).  Second, "[t]o violate the Cruel and Unusual

8   Punishment Clause, a prison official must have a `sufficiently culpable state of mind' . . .. [T]hat state of

9   mind is one of `deliberate indifference' to inmate health or safety."  Id. (citations omitted).  The prison

10  official will be liable only if "the official knows of and disregards an excessive risk to inmate health and

11  safety; the official must both be aware of facts from which the inference could be drawn that a substantial

12  risk of serious harm exists, and he must also draw the inference."  Id. at 1979.

13      Here, plaintiff claims defendants continued retaliatory actions constitute cruel and unusual

14  punishment.  As explained in this report, plaintiff has failed to show defendants alleged behavior

15  amounted to retaliation.  More importantly, plaintiff has not shown that defendant's acts or omissions to

16  act have been sufficiently serious to support an Eighth Amendment claim.   The court further finds that

17  the prison records indicate that the actions taken allegedly against plaintiff  were not taken with the intent

18  to violate the Cruel and Unusual Punishment Clause of the U.S. Constitution.  Accordingly, defendants'

19  motion for summary judgment should be granted and plaintiff's claim(s) based on cruel and unusual

20  punishment should also be dismissed.

21  *D. DUE PROCESS*

22      The Due Process Clause of the Fourteenth Amendment provides that no state shall deprive "any

23  person of life, liberty, or property, without due process of law."  U.S. Const. Amend. XIV.  Procedural

24  due process does not protect the actual deprivation of the life, liberty, or property in question, but ensures

25  that individuals are given an adequate opportunity to challenge the government action.  Carey v. Piphus,

26  435 U.S. 247, 259 (1978).  To state a claim for a violation of procedural due process, plaintiffs must show

27  (1) a protected interest has been taken, and (2) procedural safeguards are inadequate.  Board of Regents v.

28  Roth, 408 U.S. 564, 569-70 (1972).

    The Supreme Court changed the analysis employed in determining whether a state has created a

protected liberty interest entitling an inmate to the procedural  protections afforded by the Due Process Clause.  Sandin v. Conner, 115 S.Ct.  2293, 2300 (1995).  We no longer focus on the language of prison regulations to determine whether such regulations place substantive restrictions on an  official's discretion.  Mujahid v. Meyer, 59 F.3d 931, 932 (9th Cir.1995).

In Sandin, the Supreme Court was called upon to determine whether Hawaii prison regulations or the Due Process Clause afforded Sandin a protected liberty interest that would entitle him to procedural protections before transfer into segregation.  The Court held that prisoners have liberty  interests protected by the Due Process Clause only where the contemplated restraint "imposes atypical and significant hardship on the inmate in relation  to the ordinary incidents of prison life."  Sandin, 115 S.Ct. at 2300.  In its specific application to inmate Sandin, the Court stated the test another  way:  "Based on a comparison between inmates inside and outside disciplinary segregation, the state's actions in placing [Sandin] there for 30 days did not work a major disruption in his environment."  Id. at  2301.  The Court rejected its prior test traditionally used to determine  whether a prison regulation creates a liberty interest, to wit:  whether the relevant regulation contains language that is mandatory or discretionary.  Id. at 2298-2300.  The Court in its new approach  seeks to prevent turning every rule or regulation that establishes a procedure  or requires the provision of an amenity into a right that implicates a liberty interest.  It cited examples, inter alia: tray lunches rather than  sack lunches, any book that is not a security threat, and cells with TV and   electric outlets.

Here, plaintiff claims a violation of his due process rights when he was transferred into another custody level, denied the opportunity to attend his classification review hearing, and received numerous infractions.  As explained above, prisoners to not have a protected liberty interest in remaining in one prison unit over another.  Furthermore, plaintiff's infractions did not result in the loss of good time or any other protected liberty interest.  As such, plaintiff's due process claim must fail.  Defendant's motion to dismiss plaintiff's due process claims should be granted.

E. QUALIFIED IMMUNITY

State officials are entitled to qualified immunity unless he or she violated clearly established law of which a reasonable person should have known.  Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 2732 (1982).  When evaluating the issue of qualified immunity, the court must follow a two-part test for qualified immunity announced in Saucier v. Katz: (1) whether the facts alleged "show [that] the officer[s'] conduct violated a constitutional right"; and (2) whether the constitutional right in question was "clearly

established" such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." 533 U.S. 194, 201-02 (2001); *see also* <u>Estate of Ford v. Ramirez-Palmer</u>, 301 F.3d 1043, 1050 (9th Cir.2002).

Here, plaintiff claims defendants retaliated and violated his U.S. Constitutional rights when Victoria Barshaw contacted Asotin County Superior Court and informed the court funds in plaintiff's inmate trust account were available to be garnished. The undersigned is not aware of any federal law or standard that clearly prevents state prison officials from contacting a state government creditor to inform them of available monies. Accordingly, the claimed right has not been clearly established, and defendant Barshaw could reasonably believe her actions were lawful. Defendant Barshaw is entitled to qualified immunity.

<u>CONCLUSION</u>

The undersigned has reviewed all of plaintiff's allegations and causes of action. Based on the foregoing discussion, the Court should GRANT both defendants' motion for summery judgment 9Doc. 44) and defendant Barshaw's motion to dismiss (Doc. 58). When presented with the factual allegations and support provided by the parties in support of and opposition to defendants' dispositive motions, no reasonable juror could find that plaintiff was retaliated against, denied due process, subjected to cruel and unusual punishment or otherwise denied any constitutional right as alleged by plaintiff.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **October 26, 2007**, as noted in the caption.

DATED this 4th day of October, 2007.

*/s/ J. Kelley Arnold*
J. Kelley Arnold
United States Magistrate Judge